OSMYN BAKER & another *vs.* AUSTIN SMITH, Executor.

A testator bequeathed to his executor, in trust, a large sum, to be secured at interest, and managed as an accumulating fund, until a board of trustees should be duly constituted and organized, and then that said sum should be paid over to such trustees, to be managed in the same manner ; and he directed that said board of trustees should be constituted as follows ; viz. that each of eight certain towns should annually, in March or April, at a legal town meeting, choose an elector, and that the several electors, thus chosen, should annually meet at N. on the first Wednesday of May, and elect three trustees, who should be a board of trustees for one year; provided, however, that the first choice of said electors, by the towns, and also their first meeting at N., might be made and holden at such convenient time, within one year after the testator's decease, as the judge of probate should appoint, and that said trustees, thus elected at said first meeting, should hold their office till the first Wednesday of May next following, and until others should be chosen in their place : The testator died in December 1845, and his will was not finally approved and allowed until July 1847 : On the 10th of August 1847, the judge of probate appointed the 30th of said August as the time for the eight towns to choose electors, and the 6th of September following as the time for the meeting of the electors at N , and electors were chosen and met at N. accordingly, and elected three persons to be trustees, who organized as a board of trustees, and demanded of the executor that he should pay over to them the sum aforesaid, according to the will; and on his refusal so to do, they brought a bill in equity against him. *Held,* that they were not legally constituted a board of trustees, because the judge of probate had no authority to direct town meetings, or a meeting of the trustees, to be held after the expiration of one year from the decease of the testator.

THIS was a bill in equity, in which it was alleged that Oliver Smith, late of Hatfield, died on the 22d of December 1845, leaving a last will, which was finally approved and allowed in the supreme judicial court, in July 1847 ; that Austin Smith, the defendant, was appointed executor of said will, and that letters testamentary were duly issued to him, by the judge of probate for the county of Hampshire, on the

10th of August 1847 ; that said Austin, as such executor, became possessed of all the property of which said Oliver died seized and possessed, (with certain exceptions,) amounting to about four hundred thousand dollars, which he was bound to deal with and dispose of according to the directions of said will : That said Oliver, by his said will, set apart the sum of two hundred thousand dollars, for certain public and charitable uses, to be administered upon a plan prescribed in said will, and directed that said sum should be kept at interest until it should accumulate to the sum of four hundred thousand dollars, and that then there should be established, out of said gross fund, certain minor funds especially appropriated to certain charitable objects designated in said will : That said Oliver, in the *third* section of his will, made the following (among other) provisions and directions :

" In order to accomplish more effectually the objects con· templated in the appropriation of the several funds hereafter designated, and for the purpose of managing the same with greater facility, security and advantage, I hereby direct that a board of trustees shall be established, to have the custody, control and management of said funds, who shall be accountable for the proper and faithful discharge of the duties appertaining to their office, and who shall manage, improve and apply said funds, and the interest arising therefrom, in the way and manner, and for the purposes and uses hereinafter specified and declared. And it shall be the duty of the said board of trustees, and their legal successors forever, to carry into full effect all the provisions of this will in relation to the receipt, custody, care, management, appropriation, expenditure and payment of the various legacies and funds designated in this will, except such as necessarily appertain, or are expressly assigned, to my executor, or to others. And I hereby order and direct that the said board of trustees shall be appointed and constituted in manner following : The several towns of Northampton, Hadley, Hatfield, Amherst and Williamsburgh, in the county of Hampshire, and Deerfield, Greenfield and Whately, in the county of Franklin, shall

annually, in the month of March or April, at a legal town meeting, (an article to that effect being inserted in the warrant therefor,) choose one person, being an inhabitant thereof, as agent for said town, to be called an elector. And the several electors thus chosen, such choice being duly certified, shall meet at Northampton on the first Wednesday in May annually, and shall then and there elect, by a majority of the votes given in, three suitable persons to act as trustees of said funds; and the persons thus elected shall constitute the board of trustees, and shall hold their office for one year, and until others are chosen in their stead. Provided, however, that the first choice of said electors by the towns, and also their first meeting at Northampton for the choice of trustees, may be made and holden *at such convenient and suitable time within one year after my decease, as the judge of probate for the county of Hampshire shall appoint ;* and the said trustees, thus elected at said first meeting, shall hold their office till the first Wednesday in May then next ensuing, and till others hall be chosen in their place." "And the said trustees, before entering upon the duties of their office, shall respectively give bonds, with sufficient sureties, to the treasurer of the county of Hampshire, and to the acceptance of said board of electors, for the faithful discharge of said duties; which bond shall enure to the benefit of the several funds, to each one its proportionate share." "And in case the said board of trustees shall, at any time, be reduced to a less number than two, I direct that the judge of probate for the county of Hampshire shall be requested, by the remaining trustee, to appoint two suitable persons to be associated with him in the management of said funds, until the vacancies in said board shall be filled by the electors."

The plaintiffs then set forth in the bill the following parts of the *fourth* section of said Oliver's will :

" I give to my nephew, Austin Smith, in trust however, and for the uses and purposes herein specified, the sum of two hundred thousand dollars, to be secured at interest,

and managed as an accumulating fund, by the said Austin, until the board of trustees, provided for in the preceding sec- tion, shall have been duly constituted and organized; at which time the said board of trustees shall be authorized, and it is hereby made their duty, to demand and receive of the said Austin Smith the said sum of two hundred thousand dollars, together with all the interest and income that shall then have accrued on the same. And the said Austin is hereby directed to pay over the same to the said board of trustees, as soon as the said board shall have been duly organ- ized. Provided, however, that such payment may be made by a legal transfer and delivery to said board of any of the differ- ent kinds of property, to the amount required, together with the evidences and securities thereof, of which I may die pos- sessed, at its par value if in stocks of any kind, and its appraised value if in real estate. And the said fund shall thenceforth be and remain under the care and control of said board of trustees, to be by them at all times secured and kept at interest, according to their best judgment and discretion, and managed as one entire fund, and the interest thereof annually added to the principal, thus forming an accumulating fund, without allowing any subtraction of either principal or interest therefrom, (except for the purpose of supplying any deficiency which may happen to exist, or of meeting any unforeseen emergency that may arise from the failure of the ' contingent fund' hereinafter provided,) until the said prin- cipal and interest shall amount to the full sum of four hun- dred thousand dollars."

A part of the *fifth* section of said will was then set forth in the bill, as follows : " All the residue of my estate, of every kind, not herein otherwise disposed of, after payment of my just debts, and the expenses of settling my estate at the probate office, I give in trust to the said Austin Smith, and for the purpose of constituting a ' contingent fund,' to be invested and managed by the said Austin, *until the said board of trustees, before mentioned, shall be organized, and thenceforth to the said trustees,* in the way and manner pointed

out in the fourth section, for managing the fund there established."

The plaintiffs then averred, in the bill, that after said will was approved and allowed, and after letters testamentary had been issued, as above mentioned, the said judge of probate, " by virtue of the above recited provision in said third section, and pursuing the manifest intent of said testator, on the 10th day of August 1847, did, by an order then made and recorded, ordain and appoint the 30th day of said August as a convenient and suitable time for the first choice of electors by the said several towns, [naming them,] as provided in the said third section of said will, and did further ordain and appoint the 6th day of September then next, as the time for the electors, so first chosen, to hold their first meeting at Northampton, for the choice of the trustees under said will," &c.

The bill then stated that town meetings were duly warned and held, according to said order and appointment of the judge of probate, at which meetings electors were duly chosen, who met on said 6th of September, and elected Osmyn Baker, John Dickinson, jr. (the plaintiffs) and Austin Smith (the defendant) as the three trustees provided for by the third section of said will ; that said trustees, so elected, accepted said trust, gave bonds for the faithful discharge of their trust, as required by said will, and organized their board ; that the plaintiffs, as a major part of said board, demanded of the defendant, as executor of said will, payment and delivery to said board of the said sum of two hundred thousand dollars, &c. but that he has refused so to do, and assigns the following reason for such refusal, viz. that " by the great delay which attended the probate of said will, a literal compliance with the directions of said testator, respecting the election and organization of said board of trustees, has not been, and cannot be, had, and that he [the defendant] cannot pay over the said moneys, or deliver the said property or securities demanded by the said board, with safety to himself as executor, without the direction of this court for his justification therein."

The prayer of the bill was, that the defendant might be held to make answer, and to account with the plaintiffs; and that said board of trustees might be declared by the court to be legally established, and for further relief.

The defendant demurred to the bill.

*Grennell,* (*Aiken* was with him,) in support of the demurrer.

The judge of probate, after the lapse of one year from the decease of the testator, had no authority to appoint a time for the choice of electors, and for their first meeting. The eighth section of the will is thus: " And I further direct, that in case of the entire failure of trustees,- from any cause whatsoever, the judge of probate for the county of Hampshire, for the time being, shall have full power and authority to nominate and appoint trustees to hold and manage said property, until other trustees shall be legally appointed in the manner hereinbefore set forth, and authorized to act in their stead." Under the exigence that happened, this provision of the will should have been complied with, or all parties should have waited for a choice of electors at March or April town meetings in 1848. In the mean time, the defendant, as executor, would have had the care of the moneys and securities, and would have been entitled to pay for such care, besides the compensation given him by the will for settling the estate. For, in the *first* section of the will, it is provided, that " if the board of trustees shall not be organized within one year after my decease, a reasonable allowance shall be made to him [the defendant] for managing said funds after that time, till the same shall be paid over to said trustees." There was no necessity, therefore, for any deviation from the literal provision of the will.

The plaintiffs' right to bring this bill is properly raised by demurrer. Cooper Eq. Pl. 166, 167. Story Eq. Pl. (1st ed.) 384 – 386.

*Delano,* for the plaintiffs. Various clauses in the will show that the testator meant that the trustees should have the exclusive management of the charity. He provided, by the

eighth section, that " if any of the provisions contained in this will cannot be executed, I hereby devise and bequeath all my property aforesaid to my said executor, and to such trustees as shall be legally appointed, in trust, to be held and disposed of as nearly according to the directions, purposes and objects hereinbefore set forth and provided, as may be consistent with law;" thereby authorizing this court to carry the provisions of the will into effect *cy pres.* And the court would have that authority, without the testator's giving it.

The testator also manifestly intended that the trustees should be organized as soon as practicable, and that his property should thereupon pass from his executor to them.

The general power of the court to carry the provisions of a will into effect *cy pres*, in case of donations to charitable uses, is well established. 2 Story on Eq. §§ 1060, 1061, 1187, 1190, 1191. *Burbank* v. *Whitney*, 24 Pick. 146. *Going* v. *Emery*, 16 Pick. 107. *Sanderson* v. *White*, 18 Pick. 328. *Bartlett* v. *Nye*, 4 Met. 378. 4 Kent Com. (5th ed.) 508, *note.* 2 ib. 288, *note.* *Mavor* v. *Nixon*, 2 Younge & Jerv. 60. *Moggridge* v. *Thackwell*, 7 Ves. 82. 1 Story on Eq. §§ 94, 95. Lewin on Trusts, 423. *St.* 1847, c. 263. Hoffm. R. 202.

SHAW, C. J. The question presented in the present case is, whether the complainants were duly appointed trustees under Oliver Smith's will, so as to be entitled to demand and receive the trust fund from the executor. See *Inhabitants of Northampton* v. *Smith*, 11 Met. 390. The court are of opinion that they were not legally constituted the board of trustees.

As the general course, the will is explicit in directing how this board of trustees shall be constituted, by the election of electors or delegates, by the respective eight towns, at the annual meeting in March or April. Then it is provided, as a special exception to this general rule, that the first meetings of the towns for the choice of electors, and also the time of their first meeting, may be directed by the judge of probate

but such meetings were to be held within one year of the decease of the testator.

This limitation or condition of the power of the judge of probate, to direct meetings to be held within one year of the decease of the testator, became impossible, because more than a year elapsed before the will was established. But we think the power ceased when the year elapsed.

It would have been a convenience, perhaps contemplated by the testator, if the will were proved soon after his decease, without controversy, and no appeal taken, that the board of trustees should be constituted immediately, especially if this should occur soon after the annual town meetings; so that nearly a year would intervene before a regular choice. But it was a convenience merely, and not a necessity ; and there was, therefore, no occasion for applying the doctrine of *cy pres.* It was, no doubt, the purpose of the testator to have a board of trustees speedily constituted ; but the mode is duly prescribed, and precisely limited. ' There was no necessity arising from the state of the funds. The testator had provided for that contingency, by providing that the trustee and executor should hold, manage and invest the funds, until the board of trustees should be constituted in the mode directed ; and he contemplated that this might extend beyond one year, by providing a compensation to his trustee and executor, if the board should not be constituted within one year.

We mean to express no doubt of the power of the court, as a court of equity, in cases of gifts to charitable uses, when the will cannot be executed precisely according to its terms, to sanction an execution which shall, as nearly as may be, carry into effect the charitable intent, *ut res magis valeat, quam pereat.* But to warrant a deviation from the plain directions of the will, the exigency must exist. Here the power of the judge of probate to appoint the first meetings of the towns was limited to one year, and the year had expired ; and there was ample provision for that case.

The power given to the judge of probate, in case of the failure of trustees, is manifestly limited to a case where

4 *

trustees have been appointed.   Besides; the express provision, that the judge of probate should exercise this power, in regard to the first meetings, and limiting it to one year, excludes the implication of an intent to confer this power under the general words, giving a like power, without limitation, in the case of *failure* of trustees.   And further; in case of the failure of trustees, after they had once been appointed and received the funds, the exigency arising from the want of proper persons to take care of the funds would be much greater than that which would exist before the first constitution of the board; because, until that time, there was an executor and trustee, appointed by the testator, charged with that duty, and competent to preserve and to manage and invest the funds, until a regular election of electors, at the annual town meetings.

*Bill dismissed.*